[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 344 
In Banc.
This is an action to recover upon an alleged promise by the defendant to pay to the plaintiff the premiums upon certain life insurance policies upon the life of L.G. Raymond, payable to his wife, Rosetta Raymond, in the event of his death.
The complaint, after alleging the corporate capacity of plaintiff and defendant, sets forth, in substance, that at the dates mentioned in the complaint L.G. Raymond was president and the owner of a large majority of the capital stock of a certain corporation named L.G. Raymond Warehouse "B," with full authority to make and enter into contracts on behalf of said corporation; that plaintiff is engaged in the business of conducting a general agency for life insurance, and as such is agent for the New World Life Insurance company; that about the month of February, 1927, Raymond applied to said insurance company for insurance on his life, and said company made and delivered to him six policies, which are described in the complaint, covering in the aggregate the sum of $50,000, payable upon his death to his wife, Rosetta Raymond, the *Page 345 
aggregate premiums being $1,839.98; that it was agreed that the first premium on said policies should be advanced and paid by the plaintiff to said insurance company on account of said Raymond and that the amount of said payments should be repaid to plaintiff by said Raymond in two instalments of one-half each respectively, six months and one year from March 14, 1927, bearing interest at the rate of 7 per cent per annum, and that thereafter the plaintiff paid the sum total to said insurance company.
The complaint further alleges:
That on about the fourth day of March, 1927, the defendant, Federal Securities company and the said L.G. Raymond Warehouse "B" entered into a contract whereby said Federal Securities company did agree to have the said L.G. Raymond Warehouse "B" act for and on behalf of the said Federal Securities company in the matter of buying and selling lumber, for which purpose the Federal Securities company as a part of said agreement promised and agreed to make advances of money to said L.G. Raymond Warehouse "B" to a large extent and thereupon said advances were made and said parties operated under said contract; that in July, 1927, the said L.G. Raymond Warehouse "B" was indebted to said Federal Securities company for such advances, and it was thereupon further stipulated and agreed between said L.G. Raymond Warehouse "B" and said Federal Securities company that all of said insurance policies should be turned over to said Federal Securities company as additional securities for such advances on the condition that said Federal Securities company would pay the cost thereof, and that said policies should be assigned by the wife of said L.G. Raymond to the said Federal Securities company and the Federal Securities company named the beneficiary therein, all in consideration of the Federal Securities company paying the said sums to said plaintiff, *Page 346 
McCargar and McKay; that the Federal Securities company did thereupon promise and agree to and with the said L.G. Raymond and Rosetta E. Raymond and L.G. Raymond Warehouse "B" to pay to this plaintiff McCargar and MacKay the said sums of money at the dates and upon the terms hereinbefore set forth to wit: that is nine hundred and forty-six dollars and ninety-nine cents ($946.99) six (6) months from May 14, 1927, with interest at seven (7) per cent per annum, and one-half of nine hundred and forty-six dollars and ninety-nine cents ($946.99) in one year from May 14, 1927, with interest at seven (7) per cent per annum; that thereupon and in consideration of the above promise of the said Federal Securities company, the said L.G. Raymond Warehouse "B" did cause the said wife of said Raymond and the said Raymond to assign said policies to the defendant and said insurance company to make said policies payable to the defendant, the Federal Securities company; that on or about the 15th day of August, 1927, the said policies of insurance upon the life of said Raymond were delivered to said Federal Securities company, duly assigned to the said Federal Securities company as beneficiary and the said Federal Securities company did accept and receive the same pursuant to said agreement and the said policies ever since have been and now are in the possession of said Federal Securities company.
That the said sum of nine hundred and forty-six dollars and ninety-nine cents ($946.99) being the first half of said total premiums with interest thereon as aforesaid, has not been paid to the plaintiff nor any part thereof."
Plaintiff asked for judgment for $946.99, with interest at the rate of 7 per cent per annum from May 14, 1927. *Page 347 
The defendant answered, admitting the corporate character and business of the parties, and further answered as follows:
"As to the matters and things set forth in paragraph V, the defendant has no knowledge or information sufficient to form a belief and therefore denies the same, each and every part and the whole thereof, except that it is admitted that the policies therein referred to were issued to the said Raymond.
As to the matters and things set forth in paragraph VI the defendant has no knowledge or information sufficient to form a belief and, therefore, denies the same, each and every part and the whole thereof.
Denies each and every matter and thing set forth in paragraph VII except as hereinafter specifically admitted, to wit, — that it is admitted that the Federal Securities company and L.G. Raymond Warehouse "B" did have an agreement whereby L.G. Raymond Warehouse "B" acted for and on behalf of the Federal Securities company in buying and selling lumber for said Federal Securities company account, and that the said parties operated under said contract, and it is further admitted that in July, 1927, the said L.G. Raymond Warehouse "B" was indebted to the defendant herein and that the said L.G. Raymond Warehouse "B" turned over to the said defendant the policies hereinbefore referred to as collateral security for said indebtedness, but it is specifically denied that said indebtedness arose by reason of advances made to the said L.G. Raymond Warehouse "B", and it is further specifically denied that the defendant agreed to pay the premiums thereon; and in this respect it is alleged and asserted that said policies were turned over to the said defendant to hold as collateral security for the indebtedness referred to pursuant to an instrument in writing containing all of the terms of the agreement had thereabout, a copy of which is hereto attached marked "exhibit A" and made a part thereof, and it is further specifically denied that said defendant *Page 348 
made any agreement with Rosetta E. Raymond or said L.G. Raymond, or anyone agreeing to pay the premiums due or to become due on said policies, or that said Federal Securities company ever was made beneficiary under said policies.
As to the matters and things set forth in paragraph IX this defendant has no knowledge or information sufficient to form a belief and, therefore, denies the same, each and every part and the whole thereof, and denies that the allegations therein contained have any materiality or any binding effect upon the rights of this defendant.
And for a first, further, separate and affirmative defense the defendant alleges as follows:
That the allegations contained in plaintiff's complaint comprise an alleged cause of action based upon a guarantee and/or a promise of a third party to answer for the debt, default or miscarriage of another, that the contract therein alleged could not be binding upon the defendant unless expressed in writing signed by the party to be charged and expressing a consideration, and in this regard it is denied that such a contract was ever made in writing or at all.
 "Exhibit A" (Attached to Answer.) August 15, 1927.
Received of Louis G. Raymond insurance policies as follows:
Amount
 No. 33796 — New World Life Insurance company, $10,000.00 No. 33797 — New World Life Insurance company, 10,000.00 No. 33798 — New World Life Insurance company, 5,000.00 No. 33800 — New World Life Insurance company, 15,000.00 No. 33801 — New World Life Insurance company, 3,500.00 No. 33802 — New World Life Insurance company, 6,500.00
These policies to be returned and released when all the indebtedness of the L.G. Raymond Warehouse "B", Inc., due Federal Securities company is satisfied and all the stock of lumber on hand repurchased by *Page 349 
the said L.G. Raymond Warehouse "B," Inc., at the original cost price plus all charges and expenses due thereon."
The plaintiff filed a reply putting all new matter in issue and thereupon a trial was had a jury being waived, whereupon the court made its findings of fact and conclusions of law, and upon these rendered a judgment in favor of defendant.
The court's findings of fact and conclusions of law are as follows:
 FINDINGS OF FACT FILED BY THE COURT I
That at all the times and dates herein mentioned the plaintiff and defendant were and now are corporations organized and existing under the laws of the state of Oregon.
 II
That one L.G. Raymond at all times and dates herein mentioned was the owner of the large majority of the capital stock and president and manager of a certain corporation named L.G. Raymond Warehouse "B," and likewise a certain corporation named the L.G. Raymond Lumber Co.
 III
That plaintiff, McCargar and MacKay, is and at all times and dates herein mentioned was a corporation engaged in the business of conducting a general agency for life insurance and other insurance in the city of Portland, Oregon, and as such is the agent for a life insurance company named the New World Life Insurance company. *Page 350 
 IV
That L.G. Raymond as an individual, took out life insurance policies as described in the complaint upon his own life with the New World Life Insurance company through the plaintiff McCargar and MacKay, the agents for said company.
 V
That these policies were issued in February, 1927, and made Rosetta Raymond, the wife of said L.G. Raymond, the beneficiary, and that said policies aggregated the sum of $50,000, upon which the premium amounted to $1,893.98, and that simultaneously said L.G. Raymond became indebted for the premiums on said insurance.
 VI
That subsequently thereto the plaintiff accepted negotiable promissory notes covering said obligation signed by the L.G. Raymond Lumber company, a corporation, said notes being the same notes that are in evidence in this case.
 VII
Thereupon the plaintiff negotiated said notes with the Investors Company of Oregon; that said Investors Company of Oregon was at the time of the filing of the complaint and at the time this cause came on for trial, the owner and holder thereof.
 VIII
That subsequent thereto, to wit: In August, 1927, said policies were assigned to the defendant corporation as collateral on an obligation owing by L.G. Raymond Warehouse "B" to the defendant and the Federal Securities company in accepting the same signed and executed a written memorandum acknowledging *Page 351 
receipt of the policies and setting forth the terms and conditions upon which the same were to be held. Said document being as follows:
August 15, 1927.
Received of Louis G. Raymond insurance policies as follows:
Amount
 No. 33796 — New World Life Insurance company, $10,000.00 No. 33797 — New World Life Insurance company, 10,000.00 No. 33798 — New World Life Insurance company, 5,000.00 No. 33800 — New World Life Insurance company, 15,000.00 No. 33801 — New World Life Insurance company, 3,500.00 No. 33802 — New World Life Insurance company, 6,500.00
These policies to be returned and released when all the indebtedness of the L.G. Raymond Warehouse "B", Inc., due Federal Securities company is satisfied and all the stock of lumber on hand repurchased by the said L.G. Raymond Warehouse "B," Inc., at the original cost price plus all charges and expenses due thereon.
 Federal Securities Company, By R.M. Fox, President.
 IX
That said documents as hereinbefore set forth contained all the terms upon which the policies were to be held.
 X
That the receipt set forth in finding number eight was accepted without protest and no objections were ever made by L.G. Raymond, L.G. Raymond Warehouse "B" or the plaintiff as to the terms thereof.
 XI
That this agreement was made directly and primarily for the benefit of L.G. Raymond Warehouse "B" and had no connection with the plaintiff and *Page 352 
was not made for its benefit, and that L.G. Raymond Warehouse "B" is still indebted to the defendant and has done nothing to redeem said policies.
 XII
That the defendant herein wrote the following letter, which letter was received by L.G. Raymond Warehouse "B," Inc.:
 Federal Securities Company Northwestern Bank Building Portland, Oregon U.S.A.
 L.G. Raymond Warehouse "B" Inc. Foot of Mill Street, Portland, Oregon.
 Gentlemen: This is to advise you that Mr. M.C. Koester is fully authorized to act for us and look after our interests and will take possession of all of our property now in your yard and warehouse "B" at the foot of Mill street.
 This in no way is to interfere with our present sales agreement and we well expect you to continue to carry it out.
 Yours very truly, Federal Securities Company, (Signed) By R.M. Fox, President.
 XIII
That pursuant to said letter, the said M.C. Koester did act for the said Federal Securities company and did take possession of the property of the Federal Securities company in the yard at warehouse "B" of the L.G. Raymond Warehouse "B," Inc., at the foot of Mill street.
 XIV
That said M.C. Koester subsequently did make an oral agreement with L.G. Raymond that the defendant herein would pay the plaintiff herein the premium *Page 353 
on the insurance policies mentioned in the complaint upon said policies being assigned to the defendant herein as collateral security; and pursuant to such oral agreement said policies were assigned as set forth in finding VIII.
From the foregoing findings of fact, the court makes the following:
CONCLUSIONS OF LAW
I
 That the agreement referred to in finding of fact numbered XIV is void under subdivision two of section 808 of the Oregon Laws.
II
 That the agreement mentioned in conclusion numbered one was not made for the benefit of the plaintiff herein and there is no liability on the part of the defendant herein to pay the sums demanded in the complaint.
III
 That the defendant is entitled to a judgment of dismissal with prejudice and permitted to recover its costs and disbursements incurred in this case.
 And thereupon and on the 28th day of January, 1929, based upon said findings of fact and conclusions of law, the following entry was made as a judgment in said cause, to wit:
 It is ordered, adjudged and decreed that judgment be entered for the defendant in this cause and that the cause of plaintiff be dismissed with prejudice and that the defendant take, have and recover of and from the plaintiff, its costs and disbursements herein taxed at $21.80."
Both parties tendered requests for findings sustaining their respective theories of the case, but these were rejected, leaving only the findings above recited.
From a judgment upon the above findings, the plaintiff appeals. *Page 354 
We have gone to some length in giving the findings in this case, owing to the fact that there is no settled, certified, or allowed bill of exceptions in the transcript. There is a copy of the oral testimony certified to by the reporter and a further undated certificate by the judge to the effect that it is a "full, true and correct transcript of all the testimony given and introduced at the trial."
While the court has been very indulgent in the matter of recognizing as valid very inartificial statements as bills of exceptions, there is nothing here that indicates that the document under consideration was intended either by judge or counsel to serve any purpose beyond that stated in the certificate, namely, a transcript of the testimony. Had it been attached to a bill of exceptions or been certified as being in itself a bill of exceptions, we could consider it, but coming in its present form it must be disregarded, and the case must be tried on the sufficiency of the findings to cover the necessary issues raised by the pleadings. In fact, such seems to be the view of counsel for appellant, whose principal argument is to the effect that plaintiff is entitled to a judgment upon the findings, and, indeed, in our view of the case, the evidence, even if we were disposed to consider it, would add nothing to the strength of plaintiff's case.
From those findings, we gather, that, when plaintiff advanced the money to pay the premiums, it took from Raymond certain negotiable promissory notes payable to plaintiff and executed by the L.G. Raymond Lumber company, a corporation, of which L.G. Raymond was the principal stockholder, president and manager, but wholly distinct from L.G. Raymond Warehouse "B", and which first named corporation was not officially concerned with the dealings between the L.G. *Page 355 
Raymond Warehouse "B" corporation and the defendant, and which is not a party to this action; that before the alleged promise of defendant to pay said premiums, these notes, which were given plaintiff for the payment of these premiums in controversy, were sold and transferred to the Investors Company of Oregon, another corporation, and that the Investors Company of Oregon was the owner and holder of said notes at the commencement of the present action and up to and including the final judgment in this case.
It is contended that by the sale of the notes given by the lumber company to plaintiff the McCargar and MacKay corporation put it beyond its power to waive the notes and sue upon the original alleged agreement, and this would probably have been true, had such a defense been pleaded by way of abatement or otherwise, but no such defense has been pleaded. The defendant stands squarely upon the defense that it never made the agreement. The defense should have been made by a special plea setting up the facts: Overholt v. Dietz, 43 Or. 194
(72 P. 695).
Findings of fact VIII, IX, X and XI recited in our statement taken together are to the effect that the receipt recited in finding VIII contained all the terms upon which the policies were to be held, unless findings XII, XIII and XIV modify them so as to render them unintelligible or contradictory.
We are of the opinion that the letter set forth in finding XII was broad enough to authorize Koester to agree for his principal to accept the policies as collateral and to bind his principal as between Raymond and the principal to pay the premiums upon the policies. A says to B, if you will assign policies upon your life to me as collateral security for a debt you *Page 356 
owe me, or as security for the performance of a contract with me, I will take them and keep the premiums paid up. Here is a contract with a consideration, but for whose benefit is it made? So far as the findings indicate, it was made, not for the benefit of McCargar and MacKay, or for the benefit of the insurance company. The fact then must have been as the court found it to be, that Koester agreed with Raymond that defendant would pay the debt due from the L.G. Raymond corporation, which had executed the notes to McCargar and MacKay, the amount of these notes representing the first premiums which McCargar and MacKay had paid to the insurance company, and the receipt of the policies, in the absence of testimony, must be taken as expressing the terms upon which it was taken, but like any other receipt it is merely a matter of evidence and other conditions of the assignment may be established by parol.
In this case we have a further finding XIV, which states that Koester made an oral agreement with L.G. Raymond, that the defendant would pay the plaintiff herein the premiums on the insurance policies mentioned in the complaint upon said policies being assigned to the defendant as collateral security, and pursuant to such oral agreement said policies were so assigned. This finding may be construed as concluding that the promise recited was the sole inducement that induced the assignment, and that there was a direct stipulation that the premiums were to be paid to plaintiff. It is contradictory to the finding that the promise was not made for the benefit of plaintiff, and which finding was no doubt made by the learned judge who presided at the trial upon the theory that the promise, being oral, was invalid as contravening the statute of frauds. *Page 357 
This court is now fairly committed to the opposite doctrine by the recent case of Sandgren v. Cain Lumber Co., 125 Or. 375
(264 P. 865) and, while previous decisions have not always been entirely uniform, this case settles the doctrine.
The findings being in this condition and not having the advantage of a bill of exceptions, whereby we would be enabled to try the case out on the facts, we think it best to send it back for a new trial whereby defects in the pleadings and omissions in the findings may be remedied and cleared up, and it is so ordered.
ROSSMAN and BROWN, JJ., not sitting.