## EAGLE PRINTING & PUBLISHING CO. v. CHANDLER et al.

No. 15875—Opinion Filed Jan. 26, 1926.

1. **Evidence—Parol Evidence to Explain Writings—Contracts—Ambiguous Terms—Intention of Parties.**

In determining the intention of parties to a written contract, the terms of which are plain and unambiguous, only the contract itself may be considered, but where the written language is indefinite and uncertain and susceptible of more than one construction, parol evidence is admissible and may be considered, not to vary or alter the terms of the written contract, but to determine what was the intention of the parties consistent with either construction of which the instrument is susceptible.

2. **Partnership — Liability on Contract — Estoppel to Deny Relation—Statutory Provisions.**

Where it is sought to hold one party to a contract liable as a partner for the debt of the other party to the same contract, the contract itself being ambiguous and uncertain in its language and susceptible of a construction other than that of a partnership relation, acts and representations of the latter party relied on to establish the partnership liability must be shown to have been done and made with the knowledge or acquiescence of the party sought to be charged, so that in equity and good conscience he will be estopped to deny the existence of the partnership relation under the provisions of Comp. Stat. 1921, secs. 8128-8129.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Garfield County; Charles Swindall, Judge.

Action by Eagle Printing & Publishing Company against L. H. Chandler and L. E. Patterson, alleged to be doing business as partners, to recover the sum of $526.70 upon an open account for advertising. Judgment by default against L. H. Chandler and in favor of L. E. Patterson, and plaintiff brings error. Affirmed.

The petition in this case was filed June 27, 1922, and alleged in substance that L. H. Chandler and L. E. Patterson constituted a partnership doing business in the city of Enid as the Criterion Theater, and that such partnership was justly and truly indebted to the plaintiff in the sum of $526.70

for advertising published in the Enid Daily Eagle at the special instance and request of defendants, as shown by an itemized statement of such account attached to the petition. The defendant L. H. Chandler made default. L. E. Patterson filed his verified answer denying generally and specifically all of the allegations of plaintiff's petition, and specifically denied that any copartnership agreement existed between the defendants, or that they were doing business as partners, and denying that said answering defendant either individually or as a partner purchased or ordered any advertising or printing of the plaintiff, or' that he agreed or was liable to pay the same. No reply was filed, and the issues as made by the petition and separate answers of L. E. Patterson were submitted to the court and jury, and verdict and judgment were returned and rendered in favor of the defendant Patterson, and against the plaintiff.

After unsuccessful motion for new trial plaintiff has brought the case here by petition in error with case-made attached for review.

Simons, McKnight & Simons, for plaintiff in error.

W. J. Otjen and Geo. W. Buckner, for defendants in error.

Opinion by LOGSDON, C. Numerous errors are assigned in the petition in error filed in this court, but in the brief and argument only one error is relied on for reversal. It is insisted that the trial court erred in permitting oral evidence to be introduced to vary and change the terms of the contract of partnership, and that because of this error the trial court committed the further error of refusing to direct a verdict in favor of the plaintiff. The only question presented and argued in the brief is the legal effect of a certain written contract executed by L. H. Chandler and L. E. Patterson on March 31, 1922, the plaintiff insisting that said instrument is a contract of partnership rendering the defendant L. E. Patterson liable in this action, while the defendant insists that no partnership is shown by said contract, and that in the absence of pleading and proof of estoppel, no liability against the defendant L. E. Patterson is shown thereunder. The contract involved is quite lengthy, but to clearly show the contrary contentions of the parties in reference thereto, it is copied as follows, omitting formal parts:

"Whereas, first party has secured from E. M. Billings a lease on her theater situated on North Independence avenue in the city of Enid, Okla., known as the Billings Theater, which lease for a good and valuable consideration first party has assigned to second party, and

"Whereas, it is the desire of the parties hereto that the name of said theater be changed to Criterion Theater, and that it be operated as a first-class motion picture and vaudeville house under the management of first party, and

"Whereas, second party has advanced to first party the sum of $2,000 to finance the operation of said theater;

"Now, therefore, the parties hereto enter into the following agreement, to wit:

"(1) The name shall be changed to Criterion Theater at once and all business shall be transacted in the name of Criterion Theater.

"(2) First party agrees to take charge of the management of said theater on April, 1922, and as such manager is to give his exclusive time to the operation thereof and is to build up its reputation and its standing in public favor with the people of the city of Enid, by showing only morally clean pictures and vaudeville and employ only persons of good character and reputation to assist him in his operation of said theater, such employes to be satisfactory to second party at all times. No employes shall be engaged for a longer period than one month at a time without consent of said second party.

"(3) First party shall operate said theater in an economical and business-like manner keeping good order at all times, and shall pay his operating expenses such as rents, taxes, salaries of manager and employes, advertising, gas and electric bills and other property promptly when due.

"(4) No purchase or contract for film rental or vaudeville, obligating the theater for more than $500 shall be made without the consent of second party, and no purchase of supplies or equipment exceeding $100 shall be made without consent of the second party.

"(5) First party shall render to second party complete weekly statements showing all receipts and disbursements, contracts or obligations of every nature incurred by said theater during the preceding or previous weeks, same to be mailed to second party on the first day of each week.

"(6) Second party shall have right to place a cashier or auditor who shall have the charge of the books and cash receipts of said theater, at any time when he so desires.

"(7) First party agrees to remit to second party the $2,000 advanced by second party as follows: One-sixth of said sum on May 1, 1922, and a like amount on the 1st day of each succeeding month, until the

full amount is returned, the remainder of which receipts shall be deposited in a sat-, isfactory bank at Enid, Okla., in the name of the Criterion Theater, and checks on such bank shall be used in payment of all proper operating expenses. Whatever remains of said income after payment of the above sums and expenses, first party shall remit on the 15th day of each month to second party, who shall deposit same to the credit of said theater in the Southwest National Bank at Oklahoma City, Okla., to become a reserve fund to be used to purchase the furnishing and equipment in said theater as provided in said lease.

"(8)    First party shall be paid for his service as manager of said theater out of the earnings thereof, the sum of $200 per month salary, plus seven and one-half (7½) per cent. commission of the net income from said business which compensation is to be considered as a part of the operating expenses and he is also to receive a part of the net profits of said enterprise as hereinafter provided.

"(9) . Should the reserve fund referred to in paragraph 7, after repaying the $2.000 provided in paragraph 7, be sufficient on or before the 27th day of June, 1923, for the furnishings and equipment of said theater as provided in said lease, and valued at $15,000, and should second party not either be called upon to advance any further sums of money, or find it necessary to do so to protect his investment or the credit of said theater, then first party is to have one-half of the net profits after paying the above sums of money, and all rents, taxes, salaries and other equipment- incurred in the operation of said theater and ·for the furnishings and equipment as above provided.

"(10)    Should the reserve fund above mentioned not be sufficient to pay for the said furnishings and equipment before option to purchase same as provided in said lease expires, or should second party be called upon or find it necessary to put more money into said business to protect his investment or the credit of said theater, then first party shall receive only one-third of the net profits as additional compensation for his services as manager of said theater, but nothing in this paragraph shall be construed as obligating second party to advance any additional money for any purpose, unless he so desires.

"(11)    Should second party desire at any time, for convenience or for protection against liability to transfer said lease and the operations of said theater to a corporation for such purpose, the first party shall have the same proportion of the issued stock of such corporation as he would be entitled to have of the net earnings as provided in paragraph 10.

"(12)    Should the parties hereto mutually agree not to exercise their option on or before the expiration of 15 months from this date and should refuse to purchase the theater furnishings and equipment, more particularly set forth in a lease from E. M. Billings to L. H. Chandler, then and in that event the reserve fund mentioned in paragraphs 7 and 9 above shall be divided by and between the parties hereto, their executors, administrators or assigns, in proportion to the net incomes of the parties hereto from said business.

"Failure of either party hereto to perform his part of this agreement shall constitute sufficient grounds for the termination thereof by the other party."

It appears that upon the trial of the case the court permitted L. E. Patterson to testify at length as to the purpose and intention of himself and Chandler in the execution of the above contract, and plaintiff urges that this action of the court was erroneous upon the authority of Purdy v. Miller-Hunter Co., 94 Okla. 209, 221 Pac. 490, and other authorities announcing the similar rule, that parol evidence is not admissible to add to, vary or contradict the terms of a written contract. Plaintiff also relies upon the rule announced by this court in Futoransky v. Pope, 57 Okla. 755, 157 Pac. 905, to the effect that where a written contract is plain and unambiguous, oral evidence is not admissible to explain its terms or to give them a different meaning from that apparent on the face of the contract, and numerous other authorities are cited in support of this rule. The rules announced by these two lines of authorities are well established and unquestionable. In fact, they are elementary. The trouble lies in their application to the contract here involved. Partnership is a matter of intent and consent. · Comp. Stat. 1921, sec. 8104. It cannot be said as a matter of law, from the language of the contract above quoted, that it was the intention of the parties at the time of the execution of the instrument, to then and there become partners in the Criterion Theater business. What may have been their intention ultimately, or after the expiration of six months from its execution, is not here involved for the reason that the liability sought to be enforced in this action arose long prior to the expiration of the six-month period. The language of the contract is certainly ambiguous and is susceptible of more than one construction. This court has stated in Cobb v. Martin, 32 Okla. 588, 123 Pac. 422, that:

"When the question whether or not a partnership exists is a matter of doubt to be decided by inferences to be drawn from all the evidence, it is one of fact for the

jury; and the court should not nonsuit or direct the jury to find a verdict for the plaintiff or defendant."

The contract in question being uncertain and ambiguous upon its face, and the ultimate intentions of the parties thereunder not being clearly apparent from the instrument itself, the trial court did not commit reversible error in submitting to the jury the question of whether the contract was a contract of partnership, and in order that the jury might correctly determine this question of fact, the trial court properly admitted the testimony here alleged to constitute error. Richardson v. Chatfield, 36 Okla. 700, 129 Pac. 728; Barricklow v. Boice, 50 Okla. 260, 150 Pac. 1094; Gilbert v. Citizens Nat. Bank of Chickasha, 61 Okla. 112, 160 Pac. 635.

It was sought by plaintiff to hold the defendant Patterson liable upon the statements of Chandler claimed to have been made indicating the existence of the partnership. It was not alleged in plaintiff's petition and no proof was offered to show that Patterson knew anything in reference to the representations made by Chandler that a partnership existed, if such representations were in fact made. Comp. Stat. 1921, sec. 8128, provides:

"Anyone permitting himself to be represented as a partner, general or special, is liable as such to third persons to whom such representation is communicated, who on the faith thereof give credit to the partnership."

Section 8129, Id., reads:

"No one is liable as a partner who is not such in fact, except as provided in the last section."

E. C. Dunlap testified upon the stand that he was the publisher of the Enid News, and on cross-examination, in answer to the question if he recalled any conversation with Mr. Patterson in reference to a $2,000 loan made by Patterson to Chandler, answered, "No, sir. I didn't know the direct connection between Mr. Chandler and Mr. Patterson from Mr. Patterson."

The last item on the itemized account sued on is dated June 15, 1922, the contract relied on was filed for record June 20, 1922, and the instant action was commenced June 28, 1922. It is thus clear that in making the contract with Chandler, and in extending him credit for the advertising, plaintiff neither relied on the terms of the contract between Chandler and Patterson, nor on statements of Patterson as to the existence of a partnership. Therefore, in the absence of allegation and proof that Patterson had

permitted Chandler to hold him out as a partner and thus secure the credit which was extended, and on which the action is based, no personal liability is shown against the defendant Patterson under the provisions of the statutes last above quoted.

While the evidence in this case is conflicting, there is ample evidence to support the verdict of the jury, and the existence of a partnership under the contract in question being an issue of fact for determination by the jury, its verdict based upon such conflicting evidence will not be disturbed.

The judgment of the trial court is, therefore, in all things affirmed.

By the Court: It is so ordered.

Note.—See under (1) 13 C. J. p. 524 § 48; 22 C. J. pp. 1173, 1174, 1175, 1177, §1570; anno. 17 L. R. A. 270; 10 R. C. L. p. 1030; 2 R. C. L. Supp. p. 1142; 4 R. C. L. Supp. p. 687; 5 R. C. L. Supp. 583. (2) 30 Cyc. p. 409; 10 R. C. L. p. 761; 2 R. C. L. Supp. p. 1068.