**HAWKINS v. MATTES et al.**

No. 23578. Jan. 8, 1935.

Rehearing Denied March 12, 1935.

Jos. L. Hull, A. J. Kriete, and Arch K. Kriete, for plaintiff in error.

Chas. E. Wells and O. K. Winterringer, for defendant in error.

Weeks, Morrow & Francis and G. A. Paul, amici curiae.

J. J. Smith and O. F. Mason, for plaintiff in error.

Commons & Chandler, for defendant in error Bank of Quapaw.

Clyde Morsey, for defendant in error G. W. Sapp.

Nellie Nesbit and Frank Nesbit, for defendant in error E. A. Mattes.

SWINDALL, J. This action was commenced in the district court of Ottawa county by the Bank of Quapaw, as plaintiff, against E. A. Mattes and Harry H. Hawkins, to recover the sum of $3,500 on a promissory note signed by E. A. Mattes and secured by a chattel mortgage covering certain buildings, machinery, and equipment used in connection with a concentrating zinc and lead mill. The defendant Hawkins did not sign the note or mortgage, but was joined as a defendant for the reason that he held a note and mortgage signed by the defendant E. A. Mattes, and his mortgage covered the mining rights and other machinery and equipment on the southwest quarter of the southeast quarter of section eighteen (18), township twenty-nine (29) north, range twenty-four (24) east, and the machinery and equipment included in this mortgage was apparently the same machinery and equipment included in plaintiff's mortgage, Hawkins' mortgage being recorded as a real estate mortgage and not filed as a chattel mortgage. Plaintiff later, by amendments to its petition, asked for a personal judgment against Hawkins, on the theory that he had, by written contract between himself and Mattes, agreed to pay or advance money to pay plaintiff's note and other indebtedness against the mining property covered by the mortgage, and during the course of the trial plaintiff further amended its petition to ask personal judgment for $200 against both Mattes and Hawkins, and the establishment of a lien against the mining property by reason of the fact that plaintiff had secured and paid for fire and tornado insurance on the properties included in its mortgage.

The defendant G. W. Sapp was brought into the case as an additional defendant for the reason that he had filed a lien against this mining property for the sum of $1,084.18, under the provisions of chapter 61 of the Session Laws of 1923, and in his answer and cross-petition alleges that he furnished compensation insurance under an oral contract with the defendants E. A. Mattes and Harry H. Hawkins, copartners doing business as the Diamond Joe Mining Company, and that the unpaid premiums thereon amounted to the said sum sued for, and asked that his lien be foreclosed and that he have a personal judgment against each of the defendants Mattes and Hawkins.

The defendant Mattes filed an answer to plaintiff's petition, generally denying all allegations therein, and stating, further, that the indebtedness claimed by plaintiff, if any, is that of the defendant Harry H. Hawkins. The defendant Hawkins filed an answer and cross-petition, duly verified, generally denying the allegations of plaintiff's petition, but admitting that he held a mortgage executed by Mattes covering the property referred to in plaintiff's petition, to secure the payment of a note for $15,000, and admitting that he had notice of the existence of a chattel mortgage held by plaintiff on a small amount of the machinery included in his mortgage. From the record hereafter it appears that plaintiff's mortgage was a renewal mortgage for balances due under a note and mortgage which antedated the Hawkins mortgage, but that the renewal note and mortgage for $3,500 was subsequent to the mortgage of defendant Hawkins. Hawkins also in his answer and cross-petition generally denied all allegations in the answer and cross-petition of the defendant G. W. Sapp, set up his own note for $15,000 against Mattes, the mortgage to secure the same, and asked for personal judgment against Mattes and for the foreclosure of his mortgage, and that same be adjudged to be a prior lien on said property junior and inferior only to such lien as might be found in favor of the plaintiff. Hawkins also set up in his petition a second and third cause of action, asking judgment against Mattes in the second cause of action in the sum of $2,000, which he alleges that he had been compelled to pay by reason of having indorsed a certain promissory note given by E. A. Mattes to the Bank of Quapaw, and in his third cause of action alleged that the defendant Mattes is indebted to him in the sum of $4,215.18, which sum he had furnished to Mattes subsequent to the date of the note referred to, in the construction and equipment of the mine on the property referred to in Hawkins' mortgage.

Mattes filed answer to this cross-petition of the defendant Hawkins, by way of general denial, but admitting the execution of the note and mortgage for $15,000, but specially denying that same was past due or that he owed anything thereon, and alleging, further, that on the 9th day of October, 1928, the same date as the note and mortgage to Hawkins, he and the defendant Hawkins had entered into a written contract (copy thereof being attached to the pleading) by virtue of which he had agreed to sell to Hawkins an undivided one-half interest in the mining mill and uncompleted concentration plant on the tract of land de-

scribed in Hawkins' mortgage; that Hawkins had thereby agreed to assume between $6,000 and $7,000 of the debts and obligations owing by Mattes and incurred in connection with said milling plant, and to put up the balance of the $15,000 in the hands of a trustee, to be used in the completion and operation of the mining mill and the mines on said premises; that other parties were at the time threatening litigation against Mattes and that the $15,000 note and mortgage was given to protect Hawkins in his investment, and that the same was to be released as soon as the claim of the other parties, or the litigation growing out of same, should be disposed of; that the litigation growing out of those claims had been finally disposed of, and that he was entitled to have the mortgage released and the note canceled, and alleged that, by virtue of the contract attached to the pleading, Mattes and Hawkins had formed between themselves a mining partnership, the profits to be divided equally, and that there had been no accounting between the partners, and that Hawkins was not entitled to maintain such suit against Mattes. He further set up a defense to Hawkins' second and third causes of action, which, for the purpose of this appeal, is unnecessary to detail.

Hawkins filed a verified reply to the answer of Mattes, generally denying the allegations thereof, and further alleging that defendant Mattes was estopped from claiming a partnership or denying the validity of the note and mortgage by reason of the fact that in a former suit in this same court Mattes had requested findings of fact of the court holding the said note and mortgage valid, and that such finding had been made by the court, and that therein the question of partnership had been urged by other parties, and that Mattes was adjudged to be the sole owner of the mining plant and property, subject to the valid note and mortgage of Hawkins for $15,000.

The case went to trial on these issues. The trial court found E. A. Mattes and Harry H. Hawkins to be partners, and rendered judgment against them for the amount of the note, with interest and attorney's fee, and also for the $200 paid by plaintiff for insurance on the property, declared a first and prior lien on the property described in plaintiff's mortgage to secure the payment of all of said indebtedness, and to foreclose said mortgage.

The court further rendered a personal judgment against the defendants E. A. Mattes and Harry H. Hawkins in favor of G. W. Sapp for the amount claimed by him, together with an attorney's fee of $150; adjudged that he had a valid second lien on the property, subject only to the lien of the plaintiff Bank of Quapaw, and ordered same foreclosed, and denied the defendant Hawkins' prayer for judgment against E. A. Mattes on his first, second, and third causes of action, expressly stating that the denial of said relief was without prejudice.

The defendant Harry H. Hawkins brings the case to this court on appeal, and in his petition in error alleges many errors, but devotes his brief to the one proposition that the court erred in holding the defendants E. A. Mattes and Harry H. Hawkins to be partners. All the parties have filed briefs, the defendant G. W. Sapp and the defendant E. A. Mattes also devoting a large portion of their brief to the question of partnership, but the Bank of Quapaw, who was the plaintiff below, devotes its brief to justifying the judgment rendered in its favor on the same theory set up in its pleadings, in which it did not rely on or allege the partnership between Mattes and Hawkins, and the bank is affected only in connection with the partnership controversy by reason of the court having excluded from consideration Hawkins' mortgage on the property, on the theory that he was a partner; that there had been no accounting between the parties, and that the contract between them provided for the release of the mortgage.

As all the parties are to some extent affected by the holding of the court as to the partnership between Mattes and Hawkins, it is advisable to dispose of that issue first.

After a careful study of the record and the briefs of all the parties, we are forcibly impressed with the aptness of the comments of Commissioner Matthews in the case of Municipal Paving Co. v. Herring et al., 50 Okla. 470, 150 P. 1067, wherein it was said on page 477 of the opinion:

"There are but few more difficult or uncertain propositions to be met with in the field of law than that of deciding whether or not a given state of facts constitutes a partnership agreement. The difficulty arises not in ascertaining the legal principles which go to constitute a partnership, but in applying them to the varying facts of each particular case. Added to the difficulty which one meets along this line is the still greater one of an immense number of widely diverging, inharmonious, and conflicting opinions which are to be found on this subject. After an extended review of the decisions at hand thereon, we admit

that we have long halted between the two opinions, and even now, after deciding that the contract under consideration does not constitute a partnership agreement, the conclusion is not entirely satisfactory to us, and must be less so to the party to whom it is adverse."

"Partnership" is defined in section 11624, O. S. 1931, as follows:

"'Partnership' is the association of two or more persons for the purpose of carrying on business together, and dividing its profits between them."

It will be seen that this definition combines two distinct elements: First, the association of two or more persons for the purpose of carrying on business together; and, second, dividing the profits between them. Many other definitions of partnership have been given by various law writers and courts, but we believe that all of them stress these two elements. This court, in the case of McKallip v. Geese, 30 Okla. 33, 118 P. 586, referred to the very exhaustive notes on the subject contained in 18 L. R. A. (N.S.), extending from pages 963 to 1106, and concurred in the conclusions arrived at by the author and set out at page 1105, as follows:

"In spite of all of the discordant decisions, it is reasonably safe, whenever the profit-sharing element is involved in a legal controversy relating to partnership or partnership liability, to accept as sound law certain propositions, which may be grouped in two classes according as the litigation is between or among the profit sharers alone, or between them and third persons. In the first class are the following statements: (1) Whether profit sharers between or among themselves are or are not partners is to be determined by their intention to form or not to form a partnership. (2) That intention is determined by their contract, if it is in writing. (3) The ordinary legal rules for construction and interpretation of written instruments apply to partnership and profit-sharing contracts. (4) If the profit-sharing contract is unwritten and oral, the speech and conduct of the parties in relation to its subject-matter prove their intention to be or not to be partners."

In the instant case, there being controversy as to the partnership, both between the profit sharers and third persons, the propositions grouped under the second class by this editorial note writer are also worthy of mention, and are as follows:

"In the second class—when there is a controversy between profit sharers and third persons—the following statements: (1) That actual partners, whatever their private agreements and however secret they have kept their relation, are liable for partnership debts. (2) That a profit sharer who is not a real partner is liable for partnership debts, if he has held himself out, or knowingly permitted others to hold him out, as a partner to creditors who have given credit to the partnership in ignorance of his actual relation to it. (3) That profit sharing is evidence of the partnership relation; but that it is not conclusive evidence of it, but at most prima facie or presumptive evidence of the partnership relation. (4) That this presumption of partnership may be overcome by countervailing proof. (5) That, when the profit sharer is simply an agent or servant, one who furnishes property, a lender of money, or a mere creditor, who receives the profits as compensation for his services, or the use of his property or money, or in order to collect his debt, without more, he is not liable as a partner, and the presumption is overthrown."

In this case there is no question of estoppel on account of the parties holding themselves out as partners, and under these circumstances the same rules of construction quite generally apply in determining the existence or nonexistence of the partnership as where the controversy is between the profit sharers alone.

As applying to the instant case and supplementing paragraphs 2 and 3 of the first class, as above stated, we would add one more rule of construction: Where a contract is ambiguous and the court is unable to ascertain the intention of the parties from the face of the instrument itself, then extrinsic parol evidence is admissible to explain it and to give the court and jury the benefit of what was intended by the parties when the contract was entered into, so long as such evidence does not tend to vary or modify the written instrument itself. This rule was stated by this court in the case of Mitchell v. Vogele, 125 Okla. 176, 256 P. 906.

The contract between Mattes and Hawkins, which was attached to the pleadings of the various parties and was introduced in evidence, with the addition of the numbering of the paragraphs for our convenience, is as follows:

"(1) This agreement made and entered into, in duplicate, on this the 9th day of October, 1928, by and between E. A. Mattes, of Joplin, Mo., of the first part, and Harry H. Hawkins, of Hockerville, Okla., of the second part:

"(2) Witnesseth, that whereas the said first party is the owner of the mining rights on the SW¼ of the SE¼, of section 18, township 29 north, range 24 east of the Indian Meridian, in Ottawa county, state of Oklahoma, and has thereon an incomplete concentrating plant and to complete the

said concentrating plant and to secure the necessary machinery and equipment for the mining and marketing of ores from said lands,

"(3) It is agreed by and between the parties hereto that the said second party will furnish the money required to purchase the necessary machinery and equipment and to install the same upon said lands; said sum to be furnished is not to exceed the sum of $15,000, but it is intended that only a sufficient sum to put the plant in operating condition is to be furnished. Liability on note limited to sums furnished.

"(4) It is further agreed that the said second party will advance such money as will be required from time to time to pay the indebtedness against said property, which is approximately $6,000, but in no event to exceed $7,000, and all such sums so advanced shall be returned to second party from the first proceeds from ores sold.

"(5) It is further agreed that the said first party will make and deliver to the said second party a nonnegotiable promissory note for the sum of $15,000, and secure the same by a mortgage on the concentrating plant, machinery and equipment on said property, to be canceled on furnishing clear title to mining rights.

"(6) It is further agreed that in event the said parties elect to abandon said venture from any cause and to surrender possession of said mining lands, and the concentrating plant, machinery, and equipment be sold, the proceeds therefrom shall be first applied to payment of existing indebtedness to others than the parties hereto, next to payment to the said second party all sums advanced by him in the venture, and the residue shall be paid to the said first party.

"(7) In consideration of the covenants and agreements of the second party, the said first party by these presents does hereby grant, bargain, sell, and assign unto the said second party an undivided one-half interest in and to the said concentrating plant, machinery, equipment, and all mining rights in and on the said above described lands.

"(8) It is further agreed that after payment of the debts and operating expenses that the profits therefrom shall be equally divided between the parties hereto.

"(9) In witness of the foregoing, we have signed our names on this the day and year first above written.

"E. A. Mattes, First Party,
"Harry H. Hawkins, Second Party.

"N. H. Matthewson,
"O. F. Mason,
"Witnesses."

It will be noted that this contract makes no reference whatever to partnership between the parties, and in view of the contentions of the parties in their pleadings and briefs, it is readily seen that the contract is indefinite and ambiguous. Parts of the contract can be found which lend themselves, to some extent, at least, to the widely different constructions which each of the parties now seeks to place on this contract. Mattes contends that the contract establishes a partnership, and Hawkins contends that it simply provides for the lending of money from Hawkins to Mattes. Paragraphs 3 and 4 provide for the advancing of money by Hawkins to Mattes, and the last sentence of paragraph 3 provides that liability on the note is to be limited to the sums furnished. Paragraph 5 provides for the execution of a note and mortgage, but without some evidence entirely outside of the contract itself, it is impossible to determine what is meant by the last few words of paragraph 5—"to be canceled on furnishing clear title to mining rights." Paragraph 6 provides that if the parties elect to abandon the venture and sell the property, the proceeds shall be used, first, to pay indebtedness to others than the parties; next, to the repayment of sums advanced by Hawkins, and the residue to go to Mattes. This does not indicate a partnership, as it appears that if a partnership was intended, the logical disposition of the proceeds from such a sale would be, first, payment of the debts; second, the repayment of amounts advanced by Hawkins; third, the repayment of moneys advanced by Mattes; and, fourth, the residue would be divided between the parties in proportion to any partnership interest. Paragraph 7 recites a sale of a half interest in the concentrating plant, machinery, and all mining rights from Mattes to Hawkins, and the eighth paragraph provides that after the payment of the debts and operating expenses the profits therefrom shall be equally divided between the parties. This is entirely inconsistent with the provisions of paragraph 6, which provide for an entirely different division of the proceeds in the case of a sale of the property.

Section 9463, O. S. 1931, provides the following rule for construction of written contracts:

"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, subject, however, to the other provisions of this article."

Section 9471 of the same article provides:

"A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."

Section 9472 provides:

"However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."

Section 9473 provides:

"If the terms of a promise are in any respect ambiguous or uncertain, it must be interpretated in the sense in which the promissor believed, at the time of making it, that the promissee understood it."

Clearly, in view of the ambiguity and uncertainty of this contract, as it now appears, by reason of the conflicting contentions of the parties thereto, an intelligent construction cannot be placed on the contract without some extrinsic evidence explaining the intention of the parties at the time the contract was made, and such acts of the parties as might show the construction which they themselves placed on the contract before any controversy arose between them.

In the case of Strange v. Hicks, 78 Okla. 1, 188 P. 347, it was said:

"The paramount rule of construction of a contract is to ascertain the intent of the parties at the time the contract was entered into, and to give effect to same if it can be done consistent with legal principles. If the language of the contract is such as to clearly show the intent of the parties, then there is no need to apply any technical rule of construction, for, where there is no doubt, there is no room for construction."

And, in the same case this court said further:

"If a contract is ambiguous and uncertain, the court may hear oral proof to ascertain the contemporary construction placed thereon. If the acts of the parties show that each has placed the same construction thereon, then in such case their construction should be given great weight. It is to be assumed that the parties to the contract know best what is meant by its terms and the least liable to be mistaken as to its intention."

Substantially the same rule has been laid down and recognized in the following cases: LaFayette v. LaFayette, 64 Okla. 93, 166 P. 169; Homa-Okla Oil Co. v. Parsons, 115 Okla. 1, 240 P. 1063; Rider v. Morgan, 31 Okla. 98, 119 P. 958; Denman v. Brennamen et al., 48 Okla. 566, 149 P. 1105; Janes v. Citizens Bank, 9 Okla. 546, 60 P. 290; Alexander v. Wright, 135 Okla. 96, 274 P. 480; Kingfisher Mill & Elevator Co. v. Westbrook, 79 Okla. 188, 192 P. 209; Eagle Printing & Pub. Co. v. Chandler, 116 Okla. 108, 243 P. 237.

From the record before us it appears that the trial court took the view that the intention of the parties must be found from the contract alone, and the parties in their briefs take the position that the finding by the trial court that a parnership did exist was arrived at from the provisions of the contract alone. Any other evidence appearing in the record which might tend to throw any light on the intention of the parties was, apparently admitted by the court for other reasons, and was not taken into consideration in determining whether or not a partnership existed between Mattes and Hawkins. Near the close of the trial, as disclosed by the record, the court, in commenting on the admissibility of parol evidence tending to explain the acts and intentions of the parties at the time the contract was executed, stated:

"The contract between Mr. Hawkins and Mr. Mattes is in writing, which I assume explains their agreement, and I do not see how you could offer evidence to clarify that."

In the same connection, after attorneys for Hawkins had stated: "We contend this was an out and out loan," the court said: "I think we are bound to determine that from the instrument." There are various other remarks clearly indicating the same view by the trial court, and, in the judgment, the trial court specifically finds that the plaintiff is entitled to judgment against the defendant Harry H. Hawkins, "upon the issues and pleadings as made up hereunder and by virtue of a partnership agreement between the said E. A. Mattes and Harry H. Hawkins."

Incidentally, it must be noted that the plaintiff did not allege a partnership between Mattes and Hawkins, and in its brief did not rely on a partnership between those parties. The trial court further finds in his judgment:

"The court further finds under said contract and the evidence, and under the issues as made up between the said Mattes and Hawkins, that said contract, a copy of which is attached to the answer of Harry H. Hawkins, was intended to and did constitute a partnership agreement between the said Mattes and Hawkins."

As we have stated, the paramount rule of construction of a contract is to ascertain the intent of the parties at the time the contract was entered into. This doctrine has been announced in many opinions

of this court. In the case of Municipal Paving Co. v. Herring, 50 Okla. 470, 150 P. 1067, it was said:

"No definite rule has ever yet been laid down which can be said to be a conclusive test as to whether or not a partnership exists inter sese from a given state of facts, but there must be, to constitute the same: (a) An intent on the part of the alleged partners to form a partnership; (b) there must be a participation generally in both profits and losses; (c) there must be such a community of interests as enables each party to make contracts, manage the business, and dispose of the whole property.

"(a) In considering the contract in the case at bar and applying the above rules, we will first examine the same in order to try to arrive at the intentions of the parties, and if we are able to do so, then their intention must control. It is almost an invariable custom, in drawing up articles of copartnership agreement, to head the written instrument with the words, 'Co-partnership Agreement', or words of similar import and meaning. In the contract here this was not done. and it is denominated an agreement, and nowhere in the entire instrument is there a hint or suggestion that it was intended to be a partnership agreement. Most certainly, if such was their intent, the same would, in some way, have been divulged in some manner in the instrument itself."

That case involved a contract as to the operation of an asphalt mine, and under the terms thereof the parties who owned a lease on the mine, who were to operate the same on capital and with tools furnished by paving contractors, were to receive as compensation a part of the profits from the paving contracts, and this court, further commenting on the facts, said:

"The contract itself does not say that the plaintiff shall share in the losses, and from an examination of the same it is manifest that the plaintiff had no seizure of its profits, and had no more control thereof than a stranger to the contract."

And, again:

"The contract did not give him the right to bind the company or the property as a member of a partnership may bind the firm and the firm property."

Of course, under section 11629, O. S. 1931, if the contract is a "partnership contract," an agreement to divide the profits of the business would imply an agreement for corresponding division of the losses, unless otherwise expressly stipulated, but, before this section of the statute could be applied, it must first be proven that it was a partnership agreement. It cannot be assumed that this is a partnership agreement merely because there is a provision for a division of the profits, and on this presumption base the further proposition that because there is a division of the profits, there must also be a division of the losses, and that, consequently, because there is a division of the profits and also a division of the losses, the partnership is conclusively proven. The fallacy of this line of reasoning is too plain for further comment.

Another case which is similar in many respects to the instant case is Eagle Printing & Pub. Co. v. Chandler, 116 Okla. 108, 243 P. 237. In that case, one of the parties to the contract agreed to furnish money to finance the operation of a theatre. The contract provided for his repayment out of the profits, and provided for a division of the net profits between the parties after the payment of the debts and expenses. The court, in commenting, said:

"Partnership is a matter of intent and consent. (Comp. Stat. 1921, sec. 8104.) It cannot be said, as a matter of law, from the language of the contract above quoted, that it was the intention of the parties, at the time of the execution of the instrument, to then and there become partners in the Criterion Theatre business. What may have been their intention ultimately, or after the expiration of six months from its execution, is not here involved, for the reason that the liability sought to be enforced in this action arose long prior to the expiration of the six-months period. The language of the contract is certainly ambiguous and is susceptible of more than one construction."

The same rule is stated and the same importance is attached to the intention of the parties in the following cases: Gillespie v. Shufflin, 91 Okla. 72, 216 P. 132; Foster v. Wilkinson, 96 Okla. 110, 220 P. 325; Morris v. Savage, 126 Okla. 221, 259 P. 239; McKallip v. Geese, 30 Okla. 33, 118 P. 586; Wammack v. Jones, 103 Okla. 1, 229 P. 159.

In the instant case, the defendant Mattes and the defendant and cross-petitioner, Sapp, take the position that the contract shows a partnership, for two reasons: (1) Because it provides for a sharing of the profits; and (2) because Mattes, by the terms of the contract, sells to Hawkins a half interest in the "concentrating plant, machinery, equipment, and all mining rights." It will be noted that the contract does not purport to sell an interest in the mining business or to give to Hawkins any right or control in the mining business. The sale of a half interest in the mining rights is far different from conveying an interest

in the mining business, and does not necessarily contemplate an association together for the carrying on of the business. Neither an agreement to share profits, nor cotenancy, nor common ownership, in either a real or personal property, constitutes facts from which a partnership can be presumed. Such facts are admissible in evidence to show the intention of the parties, but are by no means conclusive.

In the case of Gorman v. Carlock, 72 Okla. 104, 179 P. 38, it was said:

"A mere community of interest as owners of specific property or the profits from particular adventure or business does not necessarily, in itself, constitute the co-owners partners."

Expressly following this same case, we find Chadwell v. Brown, 88 Okla. 44, 211 P. 410; Nix v. Green, 95 Okla. 247, 219 P. 380; Criner v. Davenport-Bethel Co., 144 Okla. 74, 289 P. 742. In the last case there was an oral contract by which one party was to furnish capital to purchase lots and build houses and other improvements thereon, and the other party was to look after improving said lots, and they were to share in the profits. A controversy arose between the parties, and one of the parties sued for an accounting, and this court held that such agreement did not amount to a partnership, and made the following comment:

"There is no evidence in this case to show that plaintiff and defendant were to share equally in the profit and loss of their business enterprise, but the evidence does conclusively show that plaintiff and defendant were to share equally in the profits arising from the same. There is no evidence to show that defendant could be held liable for any losses that might accrue. The best that could be said of the plaintiff's and defendant's relation is they entered into a mutual speculative enterprise, which proved to be a failure."

In the case of Wammack v. Jones, 103 Okla. 1, 229 P. 159, it was said:

"A contract between the owners of an oil and gas lease with a driller to sink a test well upon such lease, in consideration of the assignment of an undivided interest in such lease to such driller, does not create a partnership between such owners and driller."

And, in commenting, in the body of the opinion, it is said:

"It is not contended that the defendants Wammack and Lindley held themselves out to be partners in this drilling enterprise, or that they had anything to do with the employment of the plaintiff. They simply made a contract with the defendant Settle to drill a test well upon their leasehold estate, and, instead of paying in cash, agreed to and did assign to said defendant a fixed interest in said estate. Of course, all of the parties owned an interest in this lease and were interested in having the test well drilled, but this did not make them partners."

Quoting further:

"The contract in the instant case expressly negatives the theory that the defendants Wammack and Lindley were to pay any part of the expense of the drilling of the well, or to in any way share in the profits and losses of such drilling. In order for the plaintiff to recover against the defendants Wammack and Lindley, the burden was upon him to show that said defendants had, by an express or implied contract, associated themselves with the defendant Settle for the purpose of drilling said well and dividing the profits and losses between themselves."

These remarks are applicable to the instant case, as there is nothing in the contract under consideration to indicate that Hawkins associated himself with Mattes in the operation of the mine. The contract merely discloses that he was furnishing money to Mattes to complete the plant and pay off some existing indebtedness; that, in consideration therefor, Mattes conveyed to him a half interest in certain machinery, equipment, and "mining rights."

In Gillespie v. Shufflin, supra, the second and third syllabus paragraphs are as follows:

"(2) Inter sese, no presumption of partnership arises from cotenancy nor from the mere operation of a mining lease by cotenants, but must be created by agreement.

"(3) Inter sese, there must be an intention of the partners to do so in order to create a partnership, and such intention cannot be inferred alone from a joint venture in drilling a well."

The same conclusion was reached in the case of J. P. Martin Co. v. O'Connor, 120 Okla. 92, 250 P. 529, where a servant or agent was paid for his services by a share of the profits.

Following the rules laid down in these authorities, we can only reach the conclusion that the contract under consideration is not sufficient to show a partnership between Mattes and Hawkins. The defendant and cross-petitioner, Sapp, alleged a partnership between these parties, and bases his right to recover against Hawkins on such partnership, and the defendant Mattes also alleged the existence of such partnership.

"The burden of proving the existence of

a partnership is ordinarily on him who alleges and relies on the fact of its existence." Mapel et al. v. Long Bell Lumber Co. et al., 103 Okla. 249, 229 P. 793; Farmers Co-operative Elevator Co. v. Farmers Union Co-operative Exchange, 127 Okla. 275, 260 P. 755; Boorigie v. Boorigie, 98 Okla. 64, 223 P. 874; Moning Dry Goods Co. v. Wiseman, 60 Okla. 94, 159 P. 259; Sanders v. Percy, 94 Okla. 145, 221 P. 420.

The parties alleging the partnership relied completely on the contract to establish same, and the finding of the court that such partnership existed was based only on this contract. It necessarily follows that the parties alleging the partnership failed to meet the burden imposed upon them, and the finding that the partnership existed was not justified by the evidence.

The question of estoppel raised by Hawkins in his reply to the answer of Mattes should be mentioned here, for the reason the same question may be involved on a retrial of this action in the district court. To sustain this pleading of estoppel against Mattes, Hawkins introduced in evidence portions of the record in the former case, tried in the district court of Ottawa county, indicating that Mattes had requested findings of fact by the court in the former case, to the effect that Mattes had borrowed $15,000 from Hawkins, all of which had been used in the completion of the mill and development work at the mine, and that Hawkins holds a mortgage on the mining property to secure the payment of said sum. We think, however, that the doctrine of estoppel does not apply under the circumstances of this case. Hawkins and Mattes were both defendants in that case, but the plaintiff and other parties were not in any way involved in the instant case, and there were also parties defendant in that case who are not parties in the instant case. There was apparently no conflict of interest between Hawkins and Mattes in that case, and they were not adverse parties, as they are in this case. There is no evidence that the defendant Hawkins has, by reason of the position taken by Mattes in the former case, changed his position to his detriment. By the claims of Mattes in that case, he has in no way been misled to his injury. There is no evidence that he was thereby induced to make any additional investments on the strength of Mattes' statements at that time, or that he had released any security which he then had. So far as is disclosed by the record, his position is exactly the same as it was then. The rule is well established in this jurisdiction, as follows:

"It is the very essence of an estoppel that the person claiming the benefits thereof was induced thereby to do the things which he did, and one who has not altered his situation in reliance upon the conduct or statement urged cannot predicate an estoppel thereon." Spencer v. First Nat. Bank, 116 Okla. 178, 243 P. 943; Williamson-Halsell-Frazier Co. v. King, 58 Okla. 120, 158 P. 1142; McCoy & Son v. First Nat. Bank, 123 Okla. 170, 252 P. 404; Rosen v. Martin, 102 Okla. 65, 226 P. 577.

In the case of Condit v. Condit, 66 Okla. 215, 168 P. 456, the rule stated is as follows:

"An estoppel operates only between parties and privies, and the party who asserts an estoppel must be one who has, in good faith, been misled to his injury."

The same rule has been recognized in a number of other cases in this court.

We think the first paragraph of the syllabus in the case of Chicago, R. I. & P. Ry. Co. v. Mashore, 21 Okla. 275, 96 P. 630, indicates the extent to which the record of the former case, as introduced by Hawkins, might be relevant and competent. That syllabus is as follows:

"In the trial of a case brought for work and labor, it developed that plaintiff had brought a prior action, in which he charged another party, as defendant, for the same services, which action was not tried and no judgment rendered therein. In the case on trial, defendant asked an instruction to the effect that this former action worked an estoppel to plaintiff's prosecution of his case against it, which was denied by the court. Held not error. The bill of particulars, in such former suit being a quasi admission, was competent as evidence, but did not constitute an estoppel."

Mention is also made in the briefs of the various parties of the defendant Hawkins' complaint that the court committed error in dismissing the second and third causes of action in his cross-petition against Mattes, and we refer to the matter here only because it may also be an issue in the retrial of this case. As hereinbefore stated, in his second cause of action he alleges that he paid $2,000 to the Bank of Quapaw for Mattes, having been compelled to do so by reason of indorsing Mattes' note to the bank, and in his third cause of action he sets up that he had advanced $4,215.18 to Mattes subsequent to the date of his mortgage for use in the construction of equipment at the mill. We do not think that the trial court erred in refusing to admit the introduction of evidence on Hawkins' second and third causes of action over the objections inter-

posed by other parties. Perhaps a more orderly procedure would have been for the parties to file a motion to strike the second and third causes of action, but certainly the matters set up in this second and third cause of action in Hawkins' cross-petition were not germane to the matters involved in the original petition of plaintiff. There is no reason why they could not be litigated between Mattes and Hawkins as a separate action, and their injection into this suit could only result in confusion. The rule was clearly stated by this court in the case of Harrill v. Lamon, 138 Okla. 264, 280 P. 849, wherein it was said:

"It is a general rule in this jurisdiction, as well as many others, that the matters set up in a cross-bill must be germane to the matters involved in the original bill or petition. And if matter so pleaded is not involved in a proper determination of the subject-matter of the original suit, a party so pleading it will be required to litigate such matter in a separate action."

This case cites many other Oklahoma cases sustaining this rule, among them Tracey v. Crepin, 40 Okla. 297, 138 P. 142, and Johnson v. Moore, 113 Okla. 238, 241 P. 140, which we think are particularly applicable to the instant case.

We now come to the cause of action of the Bank of Quapaw, the plaintiff in the case below, and, as stated above, its cause of action is based on an entirely different theory from that of the other defendants in error, and the question of partnership is not therein involved. There is no question as to the bank's right to recover as against Mattes, as Mattes executed the note and mortgage which the bank sued on, has made no defense thereto, and has not appealed from the judgment of the bank against him.

The bank, by the amendments to its petition, sought to recover judgment against Hawkins solely on the theory that by the provisions of paragraph 4 of the contract between Mattes and Hawkins, above set out, Hawkins assumed and agreed to pay this note to the bank. The bank is not mentioned in this contract, but Mattes, as a witness for the bank, testified that this note was a part of the indebtedness referred to in that paragraph. The question and answer bringing out this fact are as follows:

"Q. This provision in the contract provides: 'It is further agreed that the second party, Hawkins, will furnish such money as will be required from time to time to pay the indebtedness against said property, which is approximately $6,000, but in no event to exceed $7,000, and all such sums so advanced to be returned to the second party from the first proceeds from ores sold.' Now, Mr. Mattes, I am asking you whether the money to be advanced included the money due the plaintiff that is sued on in this case, and if that was discussed between you? A. Yes, sir."

It is the theory of the bank that this provision in the contract was for the benefit of the bank, and that it is entitled to bring an action directly against Hawkins under the provisions of section 9409, O. S. 1931, which is as follows:

"A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

And the bank, in its brief, cites in support of its contention the following cases: Staver Carriage Co. v. Jones, 32 Okla. 713, 123 P. 148; Love v. Kirkbride Drilling Co., 37 Okla. 804, 129 P. 858; Glaze v. Metcalf Thresher Co., 67 Okla. 22, 168 P. 219.

So far as we have noted, no question has ever been raised as to the validity of this statute, and practically the same rule of law has been adopted in a majority of the states of the Union, regardless of whether or not such a statute was in force in each particular jurisdiction, and if the general rule, as adopted in a majority of the states, is in any way varied by this statute, it is undoubtedly on account of the use of the word "expressly," which has a tendency to restrict the rule rather than to extend it. The principal effect of the statute is to relieve courts of this jurisdiction from the necessity of analyzing the underlying reasons for the rule. It is sufficient for us that the Legislature has adopted the rule regardless of the underlying motives and reasons which may have prompted its adoption. The difficulty in applying the rule is in determining in each individual case whether or not the contract was made expressly for the benefit of the third person. In this respect, there is little, if any, difference in the difficulties presented in states where similar statutes are in force and in states where there is no such statute. The questions involving this rule have been before the American courts on innumerable occasions, and we acknowledge the helpfulness of a note on the "Right of third person to enforce contract between others for his benefit," contained in 81 A. L. R. 1271 to 1308, the introductory statement in said note being as follows:

"The case law and the literature dealing with the subject indicated in the title of this annotation have assumed such propor-

tions that an exhaustive treatment of the question, on the scale and in the detail which usually characterize the annotations in this series, would require a volume unto itself."

The cases in the various jurisdictions are by no means in harmony, and it is impossible to reconcile all of these authorities and the reasons advanced for the various holdings of the courts. It is necessary first to carefully analyze the paragraph of the contract which the bank claims to be for its benefit, and this provision is as follows:

"It is further agreed that the said second party will advance such money as will be required from time to time to pay the indebtedness against said property, which is approximately $6,000, but in no event to exceed $7,000, and all such sums so advanced shall be returned to second party from the first proceeds from ores sold."

This paragraph stands out by itself, and there is very little in the other paragraphs of the contract which can in any way alter the construction of this paragraph. It can only be considered as an agreement by Hawkins to make loans or advances to Mattes for the purpose of paying indebtedness against the mining property. It is entirely separate from the provisions of paragraph 3, wherein Hawkins agrees to advance a sum not to exceed $15,000 to purchase necessary machinery and equipment to complete the mining mill on the property, and the provision for cancellation of the $15,000 indebtedness "on furnishing clear title to mining rights" has no application to paragraph 4, and there is nothing in the contract to make indefinite or ambiguous the provisions of paragraph 4, "and all such sums so advanced shall be returned to second party from the first proceeds from ores sold." It can only be construed as an agreement for Hawkins to assist Mattes in financing the latter's business.

The fallacy in the theory of counsel for the bank is in construing paragraph 4 to mean that Hawkins assumes or agrees to pay indebtedness to any creditor or class of creditors. There is no wording in this paragraph to justify such construction. The word "advance" is defined in Webster's Dictionary as follows:

"To furnish, as money or other value, before it becomes due, or in aid of an enterprise; to supply beforehand, as, a merchant advances money on a contract or on goods consigned to him."

And, second, Corpus Juris, page 33, defines "advance" as a verb, as follows:

"To put forward; to supply beforehand; to furnish on credit or before goods are delivered or work done; to furnish as a part of a stock or fund; to pay money before it is due; to prepay on account of an anticipated debt; to furnish money for a specified purpose understood between the parties, and the money or such equivalent to be returned."

There is nothing in this definition or in the common usage of this word to indicate that, as used in this paragraph, it could be construed as a promise to pay any sums direct to creditors. The bank is not a party to this contract and bases its right to sue Hawkins only on this statute above quoted, and unless this contract is made "expressly" for the benefit of the bank, the bank cannot maintain the action.

"Expressly" is defined in Webster's Dictionary as "in an express manner; in direct terms; with distinct purpose; particularly." Can it be said that this paragraph in the contract is particularly or in direct terms for the benefit of the bank? We have carefully examined all the cases cited in the bank's brief. We find that, in the case of Staver Carriage Co. v. Jones, supra, one Kilgore, who was a copartner of Jones, sold a partnership interest in a mercantile business to Jones, who promised as a part of the consideration to pay the debts of the firm, and the note sued on in that case by Staver Carriage Company constituted a part of the debts of the firm. The stock of merchandise was delivered to Jones, and the contract was thereby fully executed on the part of Kilgore, and the stock of goods delivered to Jones constituted a fund out of which he was to pay the creditors. Their agreement merely provided the manner of his payment for the stock of goods, and payment by him to the various creditors would merely constitute the payment of Jones' debt to Kilgore in the manner directed by Kilgore, to the same extent as if he had given a note, either negotiable or nonnegotiable, to Kilgore for the amount of his indebtedness, and Kilgore had assigned such evidence of debt to the creditors. The statutory provision merely takes the place of such an assignment. One important distinction between this case and the instant case is that Jones agreed to pay the creditors, and in the instant case Hawkins only agreed "to advance" to Mattes "such money as will be required from time to time to pay the indebtedness against the property."

In the case of Love v. Kirkbride Drilling Co., supra, the officers of a corporation had acquired in their individual names oil leases which various stockholders claimed to be

the property of the corporation. The stockholders and officers in settlement of this controversy agreed that certain of the leases should be sold at a stipulated price and the proceeds paid into the treasury of the corporation. A check for the sale price of the oil leases was made payable directly to the corporation, but was cashed by some of the parties to this contract and the money appropriated to their own use, and the corporation brought suit in its own name against the persons misappropriating such money, and this court held that the corporation was entitled to maintain the suit. There is no similarity between the facts in that case and the facts in the instant case. In that case, the contract was undoubtedly made primarily for the benefit of the corporation, with the agreement that the money from the sale of the leases should be paid into the treasury of the corporation.

In the case of Glaze v. Metcalf Thresher Co., supra, the contract sued on was between landlord and tenant, and provided that each would pay half of the expenses of threshing wheat grown on a farm. The tenant, with the knowledge of the landlord, employed a thresher to thresh the wheat. The landlord received his part of the wheat, refused to pay the thresher, and the thresher sued him, setting up his contract with the tenant to pay half of the threshing expense. Whether or not that suit was brought on the most logical theory possible, it is undoubtedly true that the thresher was entitled to the benefit of the landlord's contract with his tenant to pay half of the thresh'ng bill. There is no similarity between the circumstances in that case and in the instant case, but the only distinction necessary for us to draw at this time is that Glaze agreed "to pay" half the expense of threshing, and not "to advance" money to the tenant sufficient to pay that amount. There are other distinctions that could be drawn and other theories on which the thresher would have been entitled to recover in that case.

There are many other cases decided by this court wherein the right of a third person to bring suit on contracts was recognized, where he was not a party to the contract but where the contract was made expressly for his benefit. Among such cases are a number of cases where the grantee in a deed assumed the payment of a mortgage against the property involved, but we believe that all of these cases can easily be distinguished from the case at bar, and this court has held:

"Where the grantor, by deed with a clause specifying that the grantee assumes the mortgage, conveys land upon which there is a mortgage debt, for which said grantor was not personally liable, the grantee is not primarily liable for the deficiency arising on foreclosure sale; such clause and its acceptance being a mere agreement to indemnify the grantor and not for the benefit of the holder of the mortgage, to whom the grantor owed no obligation, unless it affirmatively appears from the evidence that the assumption clause in the deed was inserted expressly for the benefit of a third party, within the meaning of section 4988, C. O. S. 1921." Beardsley v. Stephens, 134 Okla. 243, 273 P. 240; Sterrett et al. v. Interstate Trust Co., 140 Okla. 125, 282 P. 290.

In each of these cases it was held that the contract was not made expressly for the benefit of the third person, and that the third person had no right to maintain suit thereon, and this although there was a clause in the deed by which the grantee expressly assumed the payment of the mortgage. The reasons for the holding are quite fully set out in the case of Beardsley v. Stephens, supra.

In the case of Hughes v. First State Bank of Wagoner, 106 Okla. 146, 235 P. 1097, the syllabus is as follows:

"Inasmuch as parties to a contract usually stipulate for themselves, a strong presumption obtains in any given case that such was the intention. Where a contract sets forth provisions which by specific declaration are for the benefit of a third party, and sets forth other provisions which by specific declaration are for the benefit of the second parties to the contract, held, that such third party is not a beneficiary of such latter provis'on, and that it is the duty of the court to so construe the contract as a matter of law."

In that case Hughes purchased stock amounting to a controlling interest in a bank, and the seller of the stock delivered to him a certain note and certificates of stock in another corporation, as a guaranty of all paper in the bank, and the bank filed a replev'n suit to obtain possession of said note and certificates of stock, on the theory that the contract was made for the benefit of the bank, and this court held that they had no right to maintain such action.

In the case of Hiner v. Washita Valley Bank, 51 Okla. 606, 152 P. 112, it appears that Hiner sold certain cotton to one Luce, who claimed to have arrangements with the bank to buy cotton throughout the season, and that the bank would take care of his checks for cotton. Luce gave Hiner a check

for the cotton purchased, and on refusal of the bank to pay the check Hiner brought suit against the bank. This court held that under such circumstances the statute providing that a contract made expressly for the benefit of a third person may be enforced by him, etc., had no application to such a state of facts. In that case the bank had simply agreed to finance certain business operations of Luce, and this court held that the contract was not made for the benefit of Hiner, and we are of the opinion that exactly the same condition exists in the instant case.

In discussing this class of cases, it is said in 13 Corpus Juris, 709:

"By the weight of authority, the action cannot be maintained merely because a third person will be incidentally benefited by performance of the contract; he must be a party to the consideration, or the contract must have been entered into for his benefit, and he must have some legal or equitable interest in its performance, and under the Code provisions of some states the contract must be made expressly for the benefit of the third person in order to entitle him to sue thereon."

It is, of course, true that in the instant case the bank might be incidentally benefited by the performance of the terms of the contract by Hawkins, but, as the contract did not provide directly for its payment, it was not directly benefited, and the contract was not expressly for its benefit.

In the case of Second Nat. Bank of St. Louis v. The Grand Lodge, Free and Accepted Masons of the State of Missouri, 98 U. S. 123, 25 L. Ed. 75, the Supreme Court of the United States says:

"But where a debt already exists from one person to another, a promise by a third person to pay such debt, being primarily for the benefit of the original debtor, and to relieve him from liability to pay it (there being no novation), he has a right of action against the promisor for his own indemnity, and if the original creditor can also sue, the promisor would be liable to two separate actions, and therefore the rule is that the original creditor cannot sue."

It appears that the decisions of a number of states are seriously in conflict with some of the elements of the rule laid down in that case, but the facts in this case make it worthy of mention in connection with the instant case. In that case, the Grand Lodge, by resolution, assumed payment of the $200,000 of bonds issued by the Masonic Hall Association, a corporation, provided that stock be issued to the Grand Lodge by said association to the amount of said assumption of payment by the Grand Lodge, as said bonds were paid. In the opinion the court said:

"The contract was made, as we have said, for the benefit of the association, and if enforceable at all is enforceable by it. That the several bondholders of the association are not in a situation to sue upon it is apparent upon its face."

In the case of Washburn v. Interstate Investment Co., 26 Ore. 436, 442, 443, 36 P. 533, 38 P. 620, 621, the syllabus, as reported in 38 P. 620, is as follows:

"Defendant promised to pay within 30 days a corporation's creditors, including plaintiff, and to make advances to enable it to continue in business, in consideration whereof the corporation agreed to issue the defendant one share of its stock of par value of $50 for each $50 of indebtedness paid and advance made. Held: That plaintiff, on defendant's failure to perform, cannot maintain an action against him for his claim against the corporation."

In the body of the opinion it is said:

"Where one person receives a fund or property from another, and instead of paying him therefor is allowed to retain the consideration under an agreement to pay it to the creditors of the other party; or where it is agreed between the parties to the contract, there being a valuable consideration therefor, that the promisor may discharge his debt or liability to the promisee by paying it to some third person, to whom the promisee owes some legal duty or obligation, it would be just and proper that such third party should have the right to maintain an action on the contract in his own name. But this is on the theory that, the contract being for his direct benefit, the law invests him with a privity in respect thereto by reason of his interest, and the promisor, in performing the contract, is doing nothing more than to discharge his own debt or obligation in accordance with his agreement. In such case the amount which the promisor agrees to pay is his own debt or obligation, which, by an arrangement with the promisee, he is to pay or discharge in a particular manner; and the parties, having by their contract thus treated the third party as primarily interested in its performance, they have recognized him as privy in fact to the consideration and contract, and therefore there can be no hardship in allowing him to enforce it by action in his own name as the parties to the contract contemplated. But where there is no such fund, debt or obligation in the hands of or owing from the promisor, but only an executory contract by one person to advance his own money to pay the debts of another who is neither a party to

the contract or consideration, it is difficult to see upon what principle the doctrine can be applied. In such case the contract is not made for the direct benefit of the creditor, but of the promisor, to enable him to obtain money with which to discharge his liabilities, and, if enforceable at all, it is enforceable by him. The creditors are, of course, indirectly interested in its performance, for, if the contract is complied with, their claims will be paid; and this may be said of any executory contract, whereby a debtor expects to receive money with which to pay his debts. But it has never been held, to our knowledge, that such an interest is sufficient to entitle a stranger to maintain an action to enforce the stipulation of the contract."

The body of the opinion contains much other discussion too lengthy to here quote, but which is applicable to the facts in the instant case. However, the instant case presents one additional reason why the Bank of Quapaw cannot be permitted to maintain this action, in that Hawkins did not agree to "pay" any creditors, but merely agreed to "advance" money to pay debts. Otherwise, the facts in the two cases are very similar, and we think the reasoning of the Oregon court applicable and sound. The Supreme Court of Oregon followed this case and quoted from it at length in the comparatively late case of McCargar & McKay v. Federal Securities Co., 293 P. 595, decided December 2, 1930.

The facts in the case of Davis v. Patrick, 122 U. S. 138, 7 Sup. Ct. 1102, 30 L. Ed. 1090, are in many respects similar to the case at bar. It appears that the Flagstaff Silver Mining Company owed Davis five thousand pounds for money advanced for the purpose of operating its mine, and had other obligations and was unable to carry on its business without additional financial assistance. It entered into a contract with Davis, whereby Davis was to advance ten thousand pounds additional for its operations, and the company would appoint one J. N. H. Patrick its general manager in the state of Utah, with full authority to carry on its business, and, from the profits of its operations, to repay Davis the entire amount of said advances, and providing further that if Davis became dissatisfied with the management of the business he could remove Patrick as manager and appoint another manager in his place, with all the rights and authorities delegated under the agreement, and that Davis should consult with the company in regard to any such change. J. N. H. Patrick, in the management of the business, employed his brother, A. S. Patrick, to transport sil-

ver ore, and became indebted to him for a very large amount, whereupon A. S. Patrick brought suit directly against Davis for the amount of the indebtedness. The first section of the syllabus in that case is as follows:

"In an action to recover compensation for transporting ore from a certain silver mine in Utah, it is held that an agreement between the defendant and the mining company to secure the former for advances made and to be made, whereby a manager was appointed to operate and control the mine, to pay over to the defendant the profits thereof, and deliver to him a certain quantity of ore which he had purchased, the defendant having the power to remove said manager and appoint a new one in his stead, did not make him a partner with the company nor with the manager, or make the manager his agent in managing the mine, so as to make him responsible for any contract entered into by the manager; and that certain instructions which left the jury to determine the legal effect of the contract and a power of attorney to the manager from the company, and which assumed that the defendant may have owned the ore transported, the evidence failing to show any such ownership, were erroneous."

The plaintiff based his right to maintain an action directly against Davis principally on the theory that the manager appointed for the company under the terms of the contract was thereby made the agent of Davis, and only to that extent claimed the provisions of the contract as for his benefit, but the court, in the body of the opinion, said:

"The relation between the defendant (Davis) and the company was strictly that of creditor and debtor."

We think that, in so far as a construction of paragraph 4 of the contract in the instant case is concerned, the same conclusions can be reached, that is, that the relation between Hawkins and Mattes was strictly that of creditor and debtor, in so far as the advancement of money under paragraph 4 is concerned. From a reading of this paragraph, it is readily seen that Hawkins could at any time have discharged his obligation under the contract by advancing $7,000 to Mattes for the purpose of paying indebtedness against the property, and his obligation under this paragraph would thereby have been discharged, even though Mattes neglected and refused to pay any part thereof to the creditors. By this simple test it clearly appears that the contract was made solely for the benefit of Mattes, and his creditors could be only incidentally benefited thereby, and Mattes, and he alone, could

maintain an action for breach of the provisions of this paragraph.

The bank also insists that it is entitled to judgment, as prayed for in the amendment to its petition, for the $200 paid by it for fire and tornado insurance on property covered by the mortgage, and as the mortgage contains a clause providing that the property "be kept fully insured during the life of this mortgage or any renewal thereof," we think this contention is well taken, to the extent that the maker of the note and mortgage would be personally liable to reimburse the bank for said amount so advanced for insurance, and the bank has a valid lien on the property covered by the mortgage to secure this sum, in addition to the balance due on the note. This court held, in the case of McNeal v. Truesdell et ux., 164 Okla. 131, 23 P. (2d) 193, that:

"Clauses in mortgages providing for insurance of buildings on the premises by the mortgagor are valid and binding on the parties. They are intended for the protection of the mortgagee."

This statement of the rule seems to conform to the general rule as established in other jurisdictions. 41 C. J., 471, sec. 376.

The bank devotes some space in its brief to the priority of its mortgage over the Hawkins mortgage, but this does not seem to be a real issue, as Hawkins admits knowledge of the bank's mortgage, and neither in his pleadings nor brief claims priority over the bank's mortgage. The bank is clearly entitled to a personal judgment against Mattes, and a further judgment foreclosing its mortgage against such property as is covered thereby, and Sapp is clearly entitled to a personal judgment against Mattes for the amount of his account, and a further judgment foreclosing his lien, subject to prior liens on such property as is subject thereto under a proper application of the law to the facts proven. But, as the judgment rendered, both in favor of the bank and in favor of Sapp, was against Mattes and Hawkins jointly, as partners, it follows that the judgment must be reversed as to all parties and the cause remanded for a new trial, and for such further action as may be consistent with the rules of law herein stated, and it is so ordered.

RILEY, C. J., CULLISON, V. C. J., and ANDREWS, McNEILL, OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur.