SANCO, Gdn., v. DOWNEY, Adm'r.

No. 32234. April 29, 1947.

*181 P. 2d 562.*

N. E. McNeill, of Tulsa, for plaintiff in error.

M. D. Wallingford, of Tulsa, for defendant in error.

CORN, J. This is an appeal by plaintiff from a judgment of the district court of Tulsa county, in an action brought by the plaintiff, guardian of Tsanko P. Tsankoff, against the defendant, administrator of the estate of Nick D. Pereff, to establish a partnership and for an accounting.

Stephen Pereff, Nick Pereff, and Tsanko P. Tsankoff were Bulgarian immigrants who settled near Jenks prior to 1930, and engaged in truck farming. By 1936, through their joint efforts, they had acquired three farms. Stephen Pereff married in 1927 and had one son, Robert Pereff, heir to the estate of Nick Pereff. Nick Pereff was a bachelor, while Tsankoff had a family in the old country. One son, Martin, plaintiff herein, immigrated to this country. Stephen Pereff died in 1937, terminating the joint venture of the parties. The real property so acquired was partitioned by judgment dated November 7, 1940, by an action in the district court. Nick Pereff received a farm of 40 acres known as the Brady farm; Tsankoff was given a farm of 57 acres known as the Sugar farm. Both of these farms were mortgaged. An unimproved tract known as the Bailey farm was set over to Stephen Pereff's heirs. The partition action did not involve equipment, machinery or personal property, all of which belonged to Nick Pereff.

During his lifetime Stephen Pereff had managed the farming operations. After his death Nick Pereff and Tsankoff made an oral agreement, reduced to a written contract February 14, 1942, agreeing to use their joint efforts in paying off incumbrances on the two farms. This agreement, after reciting that a certain tract had been set off to each of these men, and that Pereff and

Tsankoff who jointly cultivated their tracts (and had entered into a verbal agreement to use the joint proceeds to pay off the mortgage first on Tsankoff's land and then on Pereff's land, so that each might have his separate land clear), recited in substance as follows: (1) that the joint profits from the real estate had been used to pay off encumbrances on Tsankoff's land; (2) joint efforts and combined proceeds should next be used to pay off encumbrances on Pereff's farm; (3) when encumbrances were fully paid, then each party was to have tract set off to him free of any and all claims by reason of such joint efforts; (4) agreement to remain in force until encumbrances removed by joint efforts and when encumbrances were removed each party was to hold his land clear of all claims, regardless of extent to which other might have contributed to payment.

March 19, 1942, these parties entered into a supplemental agreement. This agreement recited that prior to Stephen Pereff's death, while these three were farming together, Tsankoff had advanced $700, which had never been repaid; that after Stephen Pereff's death the two (Nick and Tsankoff) had continued to farm together and had entered into the other agreement regarding the handling of the debts upon their land. It was further provided that when the encumbrances were discharged, then the net proceeds of the farms should be used to repay this $700 to Tsankoff, without interest. This agreement also provided for division of the personal property (machinery, etc.) 2/3 to Pereff and 1/3 to Tsankoff.

This arrangement was carried out during the crop years of 1942 and 1943. Tsankoff, by reason of extreme age and physical disability, was unable to perform much work, but nevertheless received a full share for his efforts. The year of 1943 was an especially good crop year, and these parties, in accordance with the terms of their agreement, discharged all the encumbrances upon their property.

Prior to his death in 1937, Stephen Pereff managed the farming operations. After his death Nick Pereff, a bachelor, took over the management. For a time Ida Lee Pereff (widow of Stephen and mother of Bobbie) stayed on the farm to keep house and also assisted in the business by keeping books. Bobbie also stayed on the farm with Nick Pereff and helped with the farming.

Due to the war there was an unusual demand for produce in 1943. A shortage of labor necessitated their taking in four other men to assist in the work, although two of these men dropped out of the venture about June, 1943. The business was carried on by what is best described as a communal enterprise, which operated in the following manner: Nick Pereff furnished the land used in the operations. The Brady farm belonged to him. The Bailey farm belonged to Stephen Pereff's estate and was rented by Nick. The Hardesty farm was leased by Nick for a term of years. Tsankoff's farm (Sugar farm) was not used in the farming operations.

The operations were handled on a weekly basis. Expenses of operation, such as cost of gas, oil, baskets, twine, etc., were first deducted from the gross receipts. The remainder of the weekly receipts were then divided equally according to the number of men engaged in the work, plus one additional part. Each Saturday such a division was made and each man received an equal share, except that Nick Pereff received the extra portion. In return for this he paid the rent on extra land, furnished all the tools, implements, etc., used, as well as the seed which was planted. This additional share represented Nick Pereff's capital outlay. Operations were always carried on in this manner, with Pereff handling all the money, and this arrangement was satisfactory to all concerned, there being no dissension or differences concerning the business until after Nick Pereff's death in February, 1944. The record shows that in 1943, Tsandoff made some $2,200, while Nick Pereff's part amounted to over $4,000.

Nick Pereff left his entire estate to his nephew, Bobbie Pereff, the will directing that Tsandoff be named executor. Tsankoff continued to live on Nick Pereff's farm, rather than on his own farm, occupied by his son and his family. There is testimony that, after Nick's death, Tsankoff stated that everything belonged to Bobbie Pereff, devisee under the will.

The will was offered for probate by Bobbie's mother, he being a minor. Tsankoff, by his attorney, entered his appearance and consented to act as executor, and therein asserted all encumbrances against the property had been paid. The will was admitted to probate and Downey was appointed administrator with will annexed, and he thereafter had the (decedent's) bank accounts standing in Pereff's name transferred to the estate and took possession of most of the personal property.

At the time the administrator took over in 1944, Tsankoff was still living on the Pereff farm. Some of the crops were already planted and four men (Bill Russeff, John George, Chris Petcoff and Carl Stefanoff) hereafter referred to as interveners, together with Tsankoff and Bobbie Pereff, were handling operations. Although the administrator could not enter into a partnership arrangement, it was agreed that these parties should continue farming operations and realize from the year's crops. All Nick Pereff's property was kept in use under this arrangement. The proceeds were to be divided in the usual manner, except that Nick Pereff's estate was to receive an additional portion for land, tools and seed.

Shortly after this, Martin Sanco had his father declared incompetent and was appointed as guardian. Tsankoff thereafter began claiming a half interest in all the personal property, and the present action was then filed by this guardian in an attempt to establish a partnership and thus secure ownership to half the assets of the Nick Pereff estate.

Both the guardian and Tsankoff commenced a course of conduct indicative of ownership. The administrator, rather than disrupt farming operations, did not interfere with their pretended ownership and direction of the farming. The interveners carried on the farming under the usual plan of operations, dividing the proceeds into sevenths. However, Martin Sanco retained three-sevenths, under an agreement to account as to the share due Nick Pereff's estate. Part of this money was deposited to Tsankoff's account in a Tulsa bank, while some was expended for seed and necessary expenses.

Plaintiff filed the present action to establish a partnership and for an accounting. The petition alleged that Stephen Pereff, Tsankoff and Nick Pereff operated a farming partnership which was dissolved by Stephen Pereff's death in 1937; that in settling the partnership Tsankoff and Nick Pereff acquired all equipment and personal property and each being in possession of real estate (as decreed in the partition action) each was entitled to one-half interest in the personal property. The petition further alleged Nick Pereff acted as manager and had collected approximately $1,900 deposited to his credit in banks (Bank of Jenks and National Bank of Tulsa) which were partnership funds. Plaintiff alleged the Pereff land was indebted to Tsankoff for $2,717, and by the supplemental agreement of March, 1942, for an additional $700, and asked judgment for this amount; also that plaintiff be declared half owner in equipment and personal property of approximate value of $5,000.

Defendant, administrator of Pereff estate, denied any partnership existed, or that the personal property was affected by partition action, or that any funds deposited in decedent's name were partnership funds; that decedent's estate owed Tsankoff any amount; that any claims Tsankoff might have had were contractual and barred because not presented within required time as claims against decedent's estate.

By cross-petition defendant alleged

Tsankoff had wrongfully taken $400, from the person and from among decedent's personal effects; that he had interfered with farming operations and threatened to evict interveners; and had wrongfully taken possession of decedent's house, and personal property.

Before trial plaintiff filed an amendment to the petition alleging the contract of March 19, 1942, was ineffective, never executed by Tsankoff, and that Pereff had been guilty of fraud toward Tsankoff, and that said contract was never actually entered into. To this defendant filed verified answer alleging Pereff's ownership and denying Tsankoff had any interest in the personal property.

After hearing the trial court rendered judgment for defendant holding that: (1) The original partnership was dissolved by Stephen Pereff's death in 1937 and the land duly partitioned, and such proceeding did not adjudicate title to personal property which was owned by Nick Pereff; (2) that all replacements were purchased with the separate funds of Nick Pereff and he paid taxes thereon; (3) that neither decedent nor his estate was indebted to Tsankoff; that plaintiff never claimed half of personal property until after Pereff's death; that Nick Pereff's portion for 1944 operations was $519.89; his estate was absolute owner of land set off to him, together with all improvements, equipment, etc., and that all money in banks in Pereff's name belonged to the estate, free of any claim of plaintiff, as separate property; that plaintiff take nothing from defendant, and defendant recover $1,219.44 from plaintiff.

In seeking reversal of this judgment plaintiff presents four propositions. The first of these is the contention that the relationship existing between Pereff and Tsankoff between November 7, 1940, and date of Pereff's death, under the oral, written and supplemental agreements of parties, constituted a partnership or joint adventure. Each proposition urged by plaintiff is based upon the assumption that a partnership

existed and that all money deposited in the Jenks bank was funds of the joint enterprise. Supporting this contention plaintiff cites decisions of this court defining partnership and joint adventures, and holding that the relation of the parties in such instances is fiduciary in character. However, plaintiff has overlooked our decisions, typified by Hawkins v. Mattes, 171 Okla. 186, 41 P. 2d 880, holding that mere community of interest as owners of profits from particular adventure or business does not necessarily constitute co-owners partners.

To establish a partnership plaintiff relied principally upon the fact that in making their 1942 income tax returns Pereff and Tsankoff returned a gross income of $6,397.50 and a net income of $1,162.08, which was then divided equally between them. This evidence is entitled to little weight in view of other facts reflected by the record. When so considered it is obvious that the 1942 income tax returns did not any more fully reflect the year's business operations than they now establish the asserted partnership.

The second contention is that the funds deposited in the Bank of Commerce of Jenks in Nick Pereff's name were partnership funds. Plaintiff asserts that it is admitted that Nick Pereff actively managed the business and handled the money; from this plaintiff reasons that since he collected and handled the money, and the bank account was carried in his name, it necessarily follows that the funds making up this account were funds of a partnership and so assets of a partnership estate.

To support this argument plaintiff attempts to trace deposits and withdrawals in this account during 1942 and 1943. It is of no value to discuss each item mentioned by plaintiff. The evidence does establish that when the proceeds were divided each Saturday Tsankoff took his portion and retained it, being distrustful of banks, until an account was opened in a Tulsa bank in his name in 1943.

The burden was upon plaintiff to establish that Tsankoff's money went into the bank account of N. D. Pereff. Without an extensive discussion of the testimony it is sufficient to note that plaintiff's evidence failed to establish such fact.

The third proposition is that the partnership was obligated to pay Tsankoff $3,417, and this was a lien upon the land partitioned to decedent, to be paid out of the net proceeds from the two farms, this being established by the written instruments.

The judgment in the partition action recited the encumbrances against the Pereff land. The contract entered into by the parties on February 14, 1942, enumerated these encumbrances. Plaintiff insists the Pereff land was indebted to Tsankoff for $2,717, and that there was an additional sum of $700 due Tsankoff under the agreement of March 9, 1942.

The agreement of these parties further provided that the encumbrances upon the land should be paid off by their joint efforts and combined profits; and, when all encumbrances were paid, then each was to own his land free and clear of any demand from the other, regardless of whether one had contributed more or less than the other to payment of the debts.

The evidence establishes that the encumbrances on the land had been paid off prior to Nick Pereff's death. Under the terms of the parties' agreement, when this was accomplished each was to have his own land free of any claim by the other. Thus, under their agreement, Tsankoff had no claim against the Pereff estate, any such claim having been discharged by the joint efforts of the parties.

Plaintiff next asserts that Tsankoff had received $2,671.43 from the partnership assets during 1942 and 1943, leaving a balance due of $745.47. The inconsistency between this contention and the claim that there was $3,417 owing Tsankoff, which was a lien upon the Pereff land, is apparent.

After making the usual assumption of the existence of a partnership, plaintiff further assumes that, since Tsankoff admittedly had some $2,671 at the time of trial, it follows that there was due him a balance of $745, representing the difference between what he admitted having in 1944 and what was due him in 1942.

Such argument is best answered by the record itself. During 1942 the parties' efforts were directed toward paying of their indebtedness. In 1942 Nick Pereff made 17 deposits in his account, totaling $6,800. But in 1943, he made only four deposits, amounting to $1,966.34. Contrasted to this, Tsankoff, in 1943, had a savings account in a Tulsa bank in which deposits of $2,204.68 were made. During the same year he made bond purchases of $2,625.

This evidence conclusively establishes that Pereff was not handling Tsankoff's money, and that Tsankoff's money was not deposited in Pereff's account, and is a satisfactory answer to plaintiff's claim that Tsankoff was entitled to credit for the difference between the amount of the original debt and the amount he had at the time of the trial.

The plaintiff further contends the trial court erred in rendering judgment against plaintiff for $1,219.44, on the accounting for the year 1944. This part of the judgment is concerned with the accounting for the farming operations carried on after Pereff's death. The administrator permitted this arrangement to be carried on as a tenancy at sufferance. The proceeds from the operations were divided into sevenths, and Pereff's estate was to receive 2/7ths, subject to deductions for labor (which Pereff would have furnished had he lived) and subject to the amount expended for seed. The parties stipulated that 1/7th of the net proceeds amounted to $1,135.53. The plaintiff was charged $84.96 for items wrongfully taken from the farm. The amount of $1,219.44 rep-

resents the difference between the 2/7th credited to the Pereff estate, less proper deductions, and the plaintiff properly was held accountable therefor.

This leaves for consideration only the question as to the correctness of the trial court's judgment decreeing that Tsankoff owned no interest in the household goods, nor in the personal property (farm equipment, machinery, trucks and livestock).

Plaintiff's claims concerning this farm equipment are thoroughly inconsistent. The petition alleged ownership equally in Tsankoff and Pereff, and Tsankoff's right to half the property. However, the supplemental agreement signed by these men on March 19, 1942, recited that Pereff was "the sole owner of all personal property on the said two farms, except the household and kitchen furniture of the said Tsanko P. Tsankoff."

The evidence establishes beyond doubt that every item of equipment used in the farming operations was purchased by Pereff in his own name, and upon his own responsibility. Every mortgage on such property was executed by him individually. The vehicles were licensed only in his name. It was the general understanding of all parties familiar with the operations that this equipment belonged to Pereff. A further fact, substantiating the trial court's finding, is the fact that Pereff's ownership was recognized by everyone connected with the enterprise and he was allowed the extra part in the division of the receipts, which included the furnishing and replacement of necessary equipment.

In rendering this judgment the trial court did not state the specific ground upon which he based the finding on this feature of the case. Undoubtedly this portion of the judgment must have been based upon the fact that Tsankoff made no claim upon the Pereff estate based upon the written agreement. In seeking to declare a partnership, and asking for accounting, plaintiff relied upon the alleged oral agreement whereby Tsankoff was alleged to own one-half of the property.

Having failed to establish the partnership and there having been no claim presented to Pereff's administrator based upon the contract of March 19, 1942, it is apparent the trial court found that any rights Tsankoff might have arose out of the alleged oral agreement. Thus, having completely failed to establish a partnership under the alleged oral agreement, plaintiff's claim of ownership in the personal property was without substantial merit, and the trial court's judgment in this respect is fully supported by the record.

The rule is settled that in an equity case the trial court's judgment carried with it a finding of all facts necessary to support such judgment, and will not be set aside unless clearly against the weight of the evidence. Benson v. Benson, 194 Okla. 309, 151 P. 2d 416; Meyers v. Central Nat. Bank, etc., 183 Okla. 231, 80 P. 2d 584.

The trial court found against the defendant on the cross-petition on the ground the proof of certain matters claimed therein was insufficient. Likewise, the trial court denied the petition of intervention by sustaining a demurrer to intervener's evidence. Such findings were not against the clear weight of the evidence, although it may be mentioned that there were certain items concerning which there was sufficient proof to at least raise a serious question as to correctness of the ruling thereon.

We have carefully examined the record herein. The judgment rendered is amply supported by the record. The judgment accordingly is affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, BAYLESS, WELCH, GIBSON, and ARNOLD, JJ., concur.